UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. _____

| | |
|---|---|
| ANA MATUS,<br>CLAUDIA CABRERA,<br>ANGELICA VASQUEZ,<br>KELYM CANALES,<br>REYNA X. LOPEZ,<br>CLAUDIA REYES,<br>DINORA REYES,<br>MARIA CASTILLO,<br>GLADIS CASTILLO,<br>MILADIS CACERES, and other similarly situated individuals,<br><br>              Plaintiffs,<br>v.<br><br>MB FLORIDA LIMITED, LLC d/b/a Grand Beach Hotel; SUNSHINE STATE MANAGEMENT, L.L.C. d/b/a PSEB; ALEX LOPATA; and VADIM LARIONOV,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT
### (OPT-IN PURSUANT TO 29 U.S.C § 216(B))

Plaintiffs, ANA MATUS, CLAUDIA CABRERA, ANGELICA VASQUEZ, KELYM CANALES, REYNA X. LOPEZ, CLAUDIA REYES, DINORA REYES, MARIA CASTILLO, GLADIS CASTILLO, MILADIS CACERES ("Plaintiffs") and other similarly situated individuals, sue the Defendants, MB FLORIDA LIMITED, LLC d/b/a Grand Beach Hotel; SUNSHINE STATE MANAGEMENT, L.L.C. d/b/a PSEB; ALEX LOPATA; and VADIM LARIONOV (collectively the "Defendants") and allege:

### JURISDICTION

1.      This is an action to recover money damages for unpaid overtime wages under the laws of the United States[1]. This Court has jurisdiction pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201-219 (Section 216 for jurisdictional placement) (the "Act" or the "FLSA") and 42 U.S.C. §1981.

**VENUE**

2.      Plaintiffs are residents of Miami-Dade County, Florida, within the jurisdiction of this Honorable Court. Plaintiffs are a covered employee for purposes of the Act.  The Plaintiffs do not read or speak English, or they barely understand English.

3.      MB FLORIDA LIMITED, LLC d/b/a Grand Beach Hotel; SUNSHINE STATE MANAGEMENT, L.L.C. d/b/a PSEB (the "Corporate Defendants"); ALEX LOPATA; and VADIM LARIONOV (the "Individual Defendants"), are Florida companies and Florida residents, respectively, having their main place of business in Miami-Dade County, Florida, where Plaintiffs worked for Defendants, and at all times material hereto were and are engaged in interstate commerce. The Individual Defendants, upon information and belief, reside in Miami-Dade, Florida.

4.      At all times material, the Defendants were "employers" as defined by the Act.

5.      The Defendant, MB FLORIDA LIMITED, LLC d/b/a Grand Beach Hotel (individually "Grand Beach") and SUNSHINE STATE MANAGEMENT, L.L.C. d/b/a PSEB (individually "Sunshine"), are joint employers, an integrated enterprise, or each one of them separately is an "employer" under the Act.

---

[1] The Plaintiffs are in the process of filing charges of race and national origin discrimination against one or more of the Defendants with the EEOC.  As soon as the Plaintiffs receive their "Right to Sue" from the EEOC, the Plaintiffs intend to move to amend this Complaint to include additional counts of discrimination for Race and National Origin discrimination under Federal and State law.

6.     The Defendants, Grand Beach and Sunshine, share employees or interchange employees; work in the direct interest of one another; and their employees are in the common control of both companies.

## COUNT I: WAGE AND HOUR FEDERAL (FLSA)
## STATUTORY VIOLATION BY PLAINTIFFS AGAINST GRAND BEACH

7.     Plaintiffs re-adopt each and every factual allegation as stated in paragraphs 1 – 6 as if set out in full herein.

8.     This action is brought by Plaintiffs, and those similarly-situated, to recover from Grand Beach overtime wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and also under the provisions of 29 U.S.C. § 207.   29 U.S.C. § 207 (a)(1) states, "No employer shall employ any of his employees… for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed."

9.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).  Grand Beach is and, at all times pertinent to this complaint, was engaged in interstate commerce.  At all times pertinent to this complaint, Grand Beach operated as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and from outside of the United States, and also provides its services for goods sold and transported from across state lines of other states, and Grand Beach obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees and customers.  Upon information and belief, the annual gross revenue of Grand

Beach was at all times material hereto in excess of $500,000.00 per annum, and/or Plaintiffs, and those similarly-situated, by virtue of working in interstate commerce, otherwise satisfy the FLSA's requirements.

10.     By reason of the foregoing, Grand Beach is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Plaintiffs, and those similarly-situated, were engaged in interstate commerce for Grand Beach.   Grand Beach's business activities involve those to which the FLSA applies.  Grand Beach is a hotel and, through its business activity, affects interstate commerce.  Plaintiffs' work for Grand Beach likewise affects interstate commerce. Plaintiffs were employed by Grand Beach as housekeepers/room attendants for Grand Beach's business.

11.     While employed by Grand Beach, Plaintiffs routinely worked in excess of 40 hours per week without being compensated at a rate of not less than one and one half times the regular rate at which they were employed.  Plaintiffs were employed as housekeepers/room attendants, performing the same or similar duties as that of those other similarly-situated housekeepers/room attendants who Plaintiffs observed worked in excess of 40 hours per week without overtime compensation.

12.     Plaintiffs were compensated a fixed amount for room cleaned at Grand Beach. The fixed amount varied from $6.00 per room to $6.40 per room[2].  This amounted to anywhere from approximately $350 to $500 per week.

13.     However, Grand Beach never properly compensated Plaintiffs for overtime on hours the Plaintiff worked in excess of 40 per week.

---

[2] On or about October of 2016, after being sued by another Plaintiff for violations of the FLSA, Grand Beach began paying Plaintiffs per hour presumably to correct violations of the FLSA.

14.    Upon information and belief, on or about July of 2014, the U.S. Department of Labor (the "DOL") investigated Grand Beach and found the Grand Beach liable to Plaintiffs and to other similarly situated individuals for violations of the FLSA.

15.    As a result of the DOL investigation, Grand Beach paid Plaintiff certain moneys and presented Plaintiff with general releases (the "Releases"), which were written in English.

16.    Grand Beach's human resources department told Plaintiffs that the Releases were a document that acknowledged receipt of a "bonus" for their work.   This statement was misleading and an intentional misrepresentation.  Grand Beach did not explain to Plaintiffs that by accepting payment they were falsely acknowledging that they were being fully compensated for unpaid overtime and that they were generally releasing Grand Beach by signing the Releases.

17.    The Plaintiffs did not understand the Releases as they did not understand English.

18.    Plaintiff seek unpaid overtime wages from 3 years from the filing of this lawsuit. If Plaintiffs can prove they were misled by Grand Beach in signing the Releases, the Plaintiffs seek overtime wages that were not paid by the Releases they signed with Grand Beach.

**Ana Matus**

19.    Plaintiff, ANA MATUS ("Matus") was employed by Grand Beach approximately between March of 2013 and October 24, 2016.

20.    From approximately March of 2013 through October 24, 2016, Matus worked between 45 to 50 hours per week for Grand Beach.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/6:00 p.m. at night, 5-6 days per week.

21.    Prior to the completion of discovery and to the best of Matus' knowledge, at the time of the filing of this complaint, Matus' good faith estimate of unpaid wages is as follows:

a.  **Overtime Wages**

        i.   $400 (average weekly pay)/ 45 = $8.88 (hourly rate) x .5 (overtime rate) = $4.44 x 5 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $3,422.22

    **b.**  **Liquidated Damages**: $3,422.22

    **c.**  **Grand Total**: $6,844.44 (minus any amounts paid to Matus during the DOL investigation).

### Claudia Cabrera

22.    Plaintiff, CLAUDIA CABRERA ("Cabrera") was employed by Grand Beach approximately between April 20, 2010 (or 2011) and October 24, 2016.

23.    From approximately April 20, 2010 (or 2011) through October 24, 2016, Cabrera worked between 45 to 50 hours per week for Grand Beach. She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m. at night, 5-6 days per week.

24.    Prior to the completion of discovery and to the best of Cabrera's knowledge, at the time of the filing of this complaint, Cabrera's good faith estimate of unpaid wages is as follows:

    **a.**  **Overtime Wages**

        i.   $400 (average weekly pay)/ 45 = $8.88 (hourly rate) x .5 (overtime rate) = $4.44 x 5 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $3,422.22

    **b.**  **Liquidated Damages**: $3,422.22

    **c.**  **Grand Total**: $6,844.44 (minus any amounts paid to Cabrera during the DOL investigation).

### Angelica Vasquez

25.    Plaintiff, ANGELICA VASQUEZ ("Vasquez") was employed by Grand Beach approximately between November 26, 2009 and October 24, 2016.

26.     From approximately November 26, 2009 through October 24, 2016, Vasquez worked 48 hours per week for Grand Beach.  She typically began to work at 8:30 a.m. in the morning and worked until 5:00 p.m. at night, 5-6 days per week.

27.     Prior to the completion of discovery and to the best of Vasquez's knowledge, at the time of the filing of this complaint, Vasquez's good faith estimate of unpaid wages is as follows:

     **a.** **Overtime Wages**

          i.  $500 (average weekly pay)/ 48 = $10.42 (hourly rate) x .5 (overtime rate) = $5.21 x 8 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $6,416.66

     **b.** **Liquidated Damages**: $6,416.66

     **c.** **Grand Total**: $12,833.33 (minus any amounts paid to Vasquez during the DOL investigation).

### Kelym Canales

28.     Plaintiff, KELYM CANALES ("Canales") was employed by Grand Beach approximately between July 2, 2014 and October 24, 2016.

29.     From approximately July 2, 2014 through October 24, 2016, Canales worked approximately 45 hours per week during some of the weeks she worked for Grand Beach (during approximately 60 weeks).

30.     Prior to the completion of discovery and to the best of Canales' knowledge, at the time of the filing of this complaint, Canales' good faith estimate of unpaid wages is as follows:

     **a.** **Overtime Wages**

          i.  $400 (average weekly pay)/ 45 = $8.88 (hourly rate) x .5 (overtime rate) = $4.44 x 5 (approximate weekly overtime hours) x 60 (approximate compensable weeks) = $1,333.33

   b. **Liquidated Damages**: $1,333.33

   c. **Grand Total**: $2.666.66.

## Reyna X. Lopez

31.    Plaintiff, REYNA X. LOPEZ ("Lopez") was employed by Grand Beach approximately between January 11, 2010 and October 24, 2016.

32.    From approximately January 11, 2010 through October 24, 2016, Lopez worked approximately 48 hours per week for Grand Beach.  She typically began to work at 8:30 a.m. in the morning and worked until 5:00 p.m., 5-6 days per week.

33.    Prior to the completion of discovery and to the best of Lopez's knowledge, at the time of the filing of this complaint, Lopez's good faith estimate of unpaid wages is as follows:

   a. **Overtime Wages**

      i. $500 (average weekly pay)/ 45 = $11.11 (hourly rate) x .5 (overtime rate)
         = $5.55 x 5 (approximate weekly overtime hours) x 154 (approximate
         compensable weeks) = $4,277.77

   b. **Liquidated Damages**: $4,277.77

   c. **Grand Total**: $8,555.55 (minus any amounts paid to Lopez during the DOL

      investigation).

## Claudia Reyes

34.    Plaintiff, Claudia Reyes ("Reyes") was employed by Grand Beach approximately between May 3, 2016 and October 24, 2016.

35.    From approximately May 3, 2016 through October 24, 2016, Reyes worked approximately 45 per week for Grand Beach.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m., 5-6 days per week.

36.    Prior to the completion of discovery and to the best of Reyes' knowledge, at the time of the filing of this complaint, Reyes' good faith estimate of unpaid wages is as follows:

**a.  Overtime Wages**

i.  $350 (average weekly pay)/ 45 = $7.77 (hourly rate) x .5 (overtime rate) = $3.88 x 5 (approximate weekly overtime hours) x 25 (approximate compensable weeks) = $486.11

**b.  Liquidated Damages**: $486.11

**c.  Grand Total**: $972.22 (minus any amounts paid to Reyes during the DOL investigation).

### Dinora Reyes

37.    Plaintiff, DINORA REYES ("Dinora") was employed by Grand Beach approximately between March of 2013 and October 24, 2016.

38.    From approximately March of 2013 through October 24, 2016, Dinora worked approximately 45 hours per week for Grand Beach.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m. at night, 5 days per week.

39.    Prior to the completion of discovery and to the best of Dinora's knowledge, at the time of the filing of this complaint, Dinora's good faith estimate of unpaid wages is as follows:

**a.  Overtime Wages**

i.  $400 (average weekly pay)/ 45 = $8.88 (hourly rate) x .5 (overtime rate) = $4.44 x 5 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $3,422.22

**b.  Liquidated Damages**: $3,422.22

**c.  Grand Total**: $6,844.44 (minus any amounts paid to Dinora during the DOL investigation).

### Maria Castillo

40.     Plaintiff, MARIA CASTILLO ("Castillo") was employed by Grand Beach approximately between December 2009 and October 24, 2016.

41.     From approximately December 2009 through October 24, 2016, Castillo worked approximately 50 hours per week for Grand Beach.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m. at night, 5-6 days per week.

42.     Prior to the completion of discovery and to the best of Castillo's knowledge, at the time of the filing of this complaint, Castillo's good faith estimate of unpaid wages is as follows:

     a.  **Overtime Wages**

        i.  $500 (average weekly pay)/ 50 = $10 (hourly rate) x .5 (overtime rate) = $5 x 10 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $7,700

     b.  **Liquidated Damages**: $7,700

     c.  **Grand Total**: $15,400 (minus any amounts paid to Castillo during the DOL investigation).

**Gladis Castillo**

43.     Plaintiff, GLADIS CASTILLO ("G. Castillo") was employed by Grand Beach approximately November of 2013 and October 24, 2016.

44.     From approximately November 2013 through October 24, 2016, G. Castillo worked approximately 50 hours per week for Grand Beach.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m. at night, 5-6 days per week.

45.     Prior to the completion of discovery and to the best of G. Castillo's knowledge, at the time of the filing of this complaint, G. Castillo's good faith estimate of unpaid wages is as follows:

a. **Overtime Wages**

    i. $500 (average weekly pay)/ 50 = $10 (hourly rate) x .5 (overtime rate) = $5 x 10 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $7,700

b. **Liquidated Damages**: $7,700

c. **Grand Total**: $15,400 (minus any amounts paid to G. Castillo during the DOL investigation).

### Miladis Caceres

46.    Plaintiff, MILADIS CACERES ("Caceres") was employed by Grand Beach approximately February of 2012 and October 24, 2016.

47.    From approximately February 2012 through October 24, 2016, Caceres worked approximately 50 hours per week for Grand Beach.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m. at night, 5-6 days per week.

48.    Prior to the completion of discovery and to the best of Caceres' knowledge, at the time of the filing of this complaint, Caceres' good faith estimate of unpaid wages is as follows:

a. **Overtime Wages**

    i. $500 (average weekly pay)/ 50 = $10 (hourly rate) x .5 (overtime rate) = $5 x 10 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $7,700

b. **Liquidated Damages**: $7,700

c. **Grand Total**: $15,400 (minus any amounts paid to Caceres during the DOL investigation).

49.    At all times material hereto, Grand Beach failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Plaintiffs, and those similarly-situated, performed services and worked in excess of the maximum hours provided by the FLSA

but no provision was made by Grand Beach to properly pay them at the rate of time and one half for all hours worked in excess of 40 hours per workweek as provided in said FLSA.  The additional persons who may become Plaintiffs in this action are weekly-paid employees and/or former employees of Grand Beach who are and who were subject to the unlawful payroll practices and procedures of Grand Beach and were not properly paid time and one half of their regular rate of pay for all overtime hours and straight time hours worked in excess of 40 per week.

50.     Grand Beach knew and/or showed reckless disregard of the provisions of the FLSA concerning the payment of overtime wages as required by the Fair Labor Standards Act and remains owing Plaintiffs, and those similarly-situated, these overtime wages since the commencement of Plaintiffs', and those similarly-situated, employees employment with Grand Beach as set forth above, and Plaintiffs, and those similarly-situated, are entitled to recover double damages.  Grand Beach never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to overtime payments.

51.     Grand Beach willfully and intentionally refused to pay Plaintiffs overtime wages as required by the law of the United States as set forth above and remains owing Plaintiffs these overtime wages since the commencement of Plaintiffs' employment with Grand Beach as set forth above.

52.     Grand Beach willfully and intentionally failed to keep records of all hours worked by Plaintiffs and of all payments made to Plaintiffs pursuant to the Act and the Code of Federal Regulations.

53.     Plaintiffs have retained the law offices of the undersigned attorney to represent them in this action and are obligated to pay a reasonable attorneys' fee.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS, and those similarly-situated, request that this Honorable Court:

A.      Enter judgment for PLAINTIFFS, and other similarly-situated, and against Grand Beach on the basis of Grand Beach's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.      Award PLAINTIFFS actual damages in the amount shown to be due for unpaid minimum wages and overtime compensation for hours worked in excess of forty per week, with interest; and

C.      Award PLAINTIFFS an equal amount in double damages/liquidated damages; and

D.      Award PLAINTIFFS reasonable attorneys' fees and costs of suit; and

E.      Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

F.      PLAINTIFFS demand a trial by jury.

## JURY DEMAND

PLAINTIFFS, and those similarly-situated, demand trial by jury of all issues triable as of right by jury.

## COUNT II: WAGE AND HOUR FEDERAL (FLSA)
## STATUTORY VIOLATION BY PLAINTIFFS AGAINST SUNSHINE

54.     Plaintiffs re-adopt each and every factual allegation as stated in paragraphs 1 – 6 as if set out in full herein.

55.     This action is brought by Plaintiffs, and those similarly-situated, to recover from Sunshine overtime wages, as well as an additional amount as liquidated damages, costs, and

reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and also under the provisions of 29 U.S.C. § 207.   29 U.S.C. § 207 (a)(1) states, "No employer shall employ any of his employees… for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed."

56.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).   Sunshine is and, at all times pertinent to this complaint, was engaged in interstate commerce.   At all times pertinent to this complaint, Sunshine operated as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and from outside of the United States, and also provides its services for goods sold and transported from across state lines of other states, and Sunshine obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees and customers.   Upon information and belief, the annual gross revenue of Sunshine was at all times material hereto in excess of $500,000.00 per annum, and/or Plaintiffs, and those similarly-situated, by virtue of working in interstate commerce, otherwise satisfy the FLSA's requirements.

57.     By reason of the foregoing, Sunshine is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Plaintiffs, and those similarly-situated, were engaged in interstate commerce for Sunshine.   Sunshine's business activities involve those to which the FLSA applies.   Sunshine is an employment agency, which

provides Grand Beach with employees and, through its business activity, affects interstate commerce.  Plaintiffs' work for Sunshine likewise affects interstate commerce. Plaintiffs were employed by Sunshine as housekeepers/room attendants for Sunshine's and Grand Beach's business.

58.     While employed by Sunshine, Plaintiffs routinely worked in excess of 40 hours per week without being compensated at a rate of not less than one and one half times the regular rate at which they were employed.  Plaintiffs were employed as housekeepers/room attendants, performing the same or similar duties as that of those other similarly-situated housekeepers/room attendants who Plaintiffs observed worked in excess of 40 hours per week without overtime compensation.

59.     Plaintiffs were compensated a fixed amount for room cleaned at Sunshine.  The fixed amount varied from $6.00 per room to $6.40 per room[3].  This amounted to anywhere from approximately $350 to $500 per week.

60.     However, Sunshine never properly compensated Plaintiffs for overtime on hours the Plaintiff worked in excess of 40 per week.

61.     Upon information and belief, on or about July of 2014, the U.S. Department of Labor (the "DOL") investigated Sunshine and Grand Beach and found them liable to Plaintiffs and to other similarly situated individuals for violations of the FLSA.

62.     As a result of the DOL investigation, Grand Beach paid Plaintiff certain moneys and presented Plaintiff with general releases (the "Releases"), which were written in English.

63.     Grand Beach's human resources department told Plaintiffs that the Releases were a document that acknowledged receipt of a "bonus" for their work.    This statement was

---

[3] On or about October of 2016, after being sued by another Plaintiff for violations of the FLSA, Grand Beach began paying Plaintiffs per hour presumably to correct violations of the FLSA.

misleading and an intentional misrepresentation.  Sunshine and Grand Beach did not explain to Plaintiffs that by accepting payment they were acknowledging that they were being fully compensated for unpaid overtime and that they were generally releasing Sunshine and Grand Beach by signing the Releases.

64.     The Plaintiffs did not understand the Releases as they did not understand English.

65.     Plaintiffs seek unpaid overtime wages from 3 years from the filing of this lawsuit. If Plaintiffs can prove they were misled by Sunshine or by Grand Beach in signing the Releases, the Plaintiffs seeks overtime wages that were not paid by the Releases they signed with Sunshine.

### Ana Matus

66.     Plaintiff, ANA MATUS ("Matus") was employed by Sunshine approximately between March of 2013 and October 24, 2016.

67.     From approximately March of 2013 through October 24, 2016, Matus worked between 45 to 50 hours per week for Sunshine.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/6:00 p.m. at night, 5-6 days per week.

68.     Prior to the completion of discovery and to the best of Matus' knowledge, at the time of the filing of this complaint, Matus' good faith estimate of unpaid wages is as follows:

    d.  **Overtime Wages**

        i.  $400 (average weekly pay)/ 45 = $8.88 (hourly rate) x .5 (overtime rate) = $4.44 x 5 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $3,422.22

    e.  **Liquidated Damages**: $3,422.22

    f.  **Grand Total**: $6,844.44 (minus any amounts paid to Matus during the DOL investigation).

**Claudia Cabrera**

69.     Plaintiff, CLAUDIA CABRERA ("Cabrera") was employed by Sunshine approximately between April 20, 2010 (or 2011) and October 24, 2016.

70.     From approximately April 20, 2010 (or 2011) through October 24, 2016, Cabrera worked between 45 to 50 hours per week for Sunshine.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m. at night, 5-6 days per week.

71.     Prior to the completion of discovery and to the best of Cabrera's knowledge, at the time of the filing of this complaint, Cabrera's good faith estimate of unpaid wages is as follows:

    **a.  Overtime Wages**

        i.  $400 (average weekly pay)/ 45 = $8.88 (hourly rate) x .5 (overtime rate) = $4.44 x 5 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $3,422.22

    **b.  Liquidated Damages**: $3,422.22

    **c.  Grand Total**: $6,844.44 (minus any amounts paid to Cabrera during the DOL investigation).

**Angelica Vasquez**

72.     Plaintiff, ANGELICA VASQUEZ ("Vasquez") was employed by Sunshine approximately between November 26, 2009 and October 24, 2016.

73.     From approximately November 26, 2009 through October 24, 2016, Vasquez worked 48 hours per week for Sunshine.  She typically began to work at 8:30 a.m. in the morning and worked until 5:00 p.m. at night, 5-6 days per week.

74.     Prior to the completion of discovery and to the best of Vasquez's knowledge, at the time of the filing of this complaint, Vasquez's good faith estimate of unpaid wages is as follows:

a.  **Overtime Wages**

i.  $500 (average weekly pay)/ 48 = $10.42 (hourly rate) x .5 (overtime rate) = $5.21 x 8 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $6,416.66

b.  **Liquidated Damages**: $6,416.66

c.  **Grand Total**: $12,833.33 (minus any amounts paid to Vasquez during the DOL investigation).

### Kelym Canales

75.     Plaintiff, KELYM CANALES ("Canales") was employed by Sunshine approximately between July 2, 2014 and October 24, 2016.

76.     From approximately July 2, 2014 through October 24, 2016, Canales worked approximately 45 hours per week during some of the weeks she worked for Sunshine (during approximately 60 weeks).

77.     Prior to the completion of discovery and to the best of Canales' knowledge, at the time of the filing of this complaint, Canales' good faith estimate of unpaid wages is as follows:

a.  **Overtime Wages**

i.  $400 (average weekly pay)/ 45 = $8.88 (hourly rate) x .5 (overtime rate) = $4.44 x 5 (approximate weekly overtime hours) x 60 (approximate compensable weeks) = $1,333.33

b.  **Liquidated Damages**: $1,333.33

c.  **Grand Total**: $2.666.66.

### Reyna X. Lopez

78.     Plaintiff, REYNA X. LOPEZ ("Lopez") was employed by Sunshine approximately between January 11, 2010 and October 24, 2016.

79.     From approximately January 11, 2010 through October 24, 2016, Lopez worked approximately 48 hours per week for Sunshine.  She typically began to work at 8:30 a.m. in the morning and worked until 5:00 p.m., 5-6 days per week.

80.     Prior to the completion of discovery and to the best of Lopez's knowledge, at the time of the filing of this complaint, Lopez's good faith estimate of unpaid wages is as follows:

    **a.   Overtime Wages**

        i.   $500 (average weekly pay)/ 45 = $11.11 (hourly rate) x .5 (overtime rate) = $5.55 x 5 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $4,277.77

    **b.   Liquidated Damages**: $4,277.77

    **c.   Grand Total**: $8,555.55 (minus any amounts paid to Lopez during the DOL investigation).

**Claudia Reyes**

81.     Plaintiff, Claudia Reyes ("Reyes") was employed by Sunshine approximately between May 3, 2016 and October 24, 2016.

82.     From approximately May 3, 2016 through October 24, 2016, Reyes worked approximately 45 per week for Sunshine.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m., 5-6 days per week.

83.     Prior to the completion of discovery and to the best of Reyes' knowledge, at the time of the filing of this complaint, Reyes' good faith estimate of unpaid wages is as follows:

    **a.   Overtime Wages**

      i. $350 (average weekly pay)/ 45 = $7.77 (hourly rate) x .5 (overtime rate) = $3.88 x 5 (approximate weekly overtime hours) x 25 (approximate compensable weeks) = $486.11

    **b.** **Liquidated Damages**: $486.11

    **c.** **Grand Total**: $972.22 (minus any amounts paid to Reyes during the DOL investigation).

### Dinora Reyes

84.    Plaintiff, DINORA REYES ("Dinora") was employed by Sunshine approximately between March of 2013 and October 24, 2016.

85.    From approximately March of 2013 through October 24, 2016, Dinora worked approximately 45 hours per week for Sunshine.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m. at night, 5 days per week.

86.    Prior to the completion of discovery and to the best of Dinora's knowledge, at the time of the filing of this complaint, Dinora's good faith estimate of unpaid wages is as follows:

    **a.** **Overtime Wages**

        i. $400 (average weekly pay)/ 45 = $8.88 (hourly rate) x .5 (overtime rate) = $4.44 x 5 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $3,422.22

    **b.** **Liquidated Damages**: $3,422.22

    **c.** **Grand Total**: $6,844.44 (minus any amounts paid to Dinora during the DOL investigation).

### Maria Castillo

87.    Plaintiff, MARIA CASTILLO ("Castillo") was employed by Sunshine approximately between December 2009 and October 24, 2016.

88.     From approximately December 2009 through October 24, 2016, Castillo worked approximately 50 hours per week for Sunshine.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m. at night, 5-6 days per week.

89.     Prior to the completion of discovery and to the best of Castillo's knowledge, at the time of the filing of this complaint, Castillo's good faith estimate of unpaid wages is as follows:

a.  **Overtime Wages**

i.  $500 (average weekly pay)/ 50 = $10 (hourly rate) x .5 (overtime rate) = $5 x 10 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $7,700

b.  **Liquidated Damages**: $7,700

c.  **Grand Total**: $15,400 (minus any amounts paid to Castillo during the DOL investigation).

### Gladis Castillo

90.     Plaintiff, GLADIS CASTILLO ("G. Castillo") was employed by Sunshine approximately November of 2013 and October 24, 2016.

91.     From approximately November 2013 through October 24, 2016, G. Castillo worked approximately 50 hours per week for Sunshine.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m. at night, 5-6 days per week.

92.     Prior to the completion of discovery and to the best of G. Castillo's knowledge, at the time of the filing of this complaint, G. Castillo's good faith estimate of unpaid wages is as follows:

a.  **Overtime Wages**

      i.   $500 (average weekly pay)/ 50 = $10 (hourly rate) x .5 (overtime rate) = $5 x 10 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $7,700

   **b.**  **Liquidated Damages**: $7,700

   **c.**  **Grand Total**: $15,400 (minus any amounts paid to G. Castillo during the DOL investigation).

<strong><u>Miladis Caceres</u></strong>

93.     Plaintiff, MILADIS CACERES ("Caceres") was employed by Sunshine approximately February of 2012 and October 24, 2016.

94.     From approximately February 2012 through October 24, 2016, Caceres worked approximately 50 hours per week for Sunshine.  She typically began to work at 8:30 a.m. in the morning and worked until 4:30/5:00 p.m. at night, 5-6 days per week.

95.     Prior to the completion of discovery and to the best of Caceres' knowledge, at the time of the filing of this complaint, Caceres' good faith estimate of unpaid wages is as follows:

   **a.**  **Overtime Wages**

      i.   $500 (average weekly pay)/ 50 = $10 (hourly rate) x .5 (overtime rate) = $5 x 10 (approximate weekly overtime hours) x 154 (approximate compensable weeks) = $7,700

   **b.**  **Liquidated Damages**: $7,700

   **c.**  **Grand Total**: $15,400 (minus any amounts paid to Caceres during the DOL investigation).

96.     At all times material hereto, Sunshine failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Plaintiffs, and those similarly-situated, performed services and worked in excess of the maximum hours provided by the FLSA but no provision was made by Sunshine to properly pay them at the rate of time and one half for all

hours worked in excess of 40 hours per workweek as provided in said FLSA.  The additional persons who may become Plaintiffs in this action are weekly-paid employees and/or former employees of Sunshine who are and who were subject to the unlawful payroll practices and procedures of Sunshine and were not properly paid time and one half of their regular rate of pay for all overtime hours and straight time hours worked in excess of 40 per week.

97.     Sunshine knew and/or showed reckless disregard of the provisions of the FLSA concerning the payment of overtime wages as required by the Fair Labor Standards Act and remains owing Plaintiffs, and those similarly-situated, these overtime wages since the commencement of Plaintiffs', and those similarly-situated, employees employment with Sunshine as set forth above, and Plaintiffs, and those similarly-situated, are entitled to recover double damages.  Sunshine never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to overtime payments.

98.     Sunshine willfully and intentionally refused to pay Plaintiffs overtime wages as required by the law of the United States as set forth above and remains owing Plaintiffs these overtime wages since the commencement of Plaintiffs' employment with Sunshine as set forth above.

99.     Sunshine willfully and intentionally failed to keep records of all hours worked by Plaintiffs and of all payments made to Plaintiffs pursuant to the Act and the Code of Federal Regulations.

100.    Plaintiffs have retained the law offices of the undersigned attorney to represent them in this action and are obligated to pay a reasonable attorneys' fee.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS, and those similarly-situated, request that this Honorable Court:

A.      Enter judgment for PLAINTIFFS, and other similarly-situated, and against Sunshine on the basis of Sunshine's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.      Award PLAINTIFFS actual damages in the amount shown to be due for unpaid minimum wages and overtime compensation for hours worked in excess of forty per week, with interest; and

C.      Award PLAINTIFFS an equal amount in double damages/liquidated damages; and

D.      Award PLAINTIFFS reasonable attorneys' fees and costs of suit; and

E.      Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

F.      PLAINTIFFS demand a trial by jury.

## JURY DEMAND

PLAINTIFFS, and those similarly-situated, demand trial by jury of all issues triable as of right by jury.

## COUNT III: WAGE AND HOUR FEDERAL (FLSA)
## STATUTORY VIOLATION BY *PLAINTIFFS* AGAINST *THE INDIVIDUAL DEFENDANTS*

101.    PLAINTIFFS re-adopt each and every factual allegation as stated in paragraphs 1-100 above as if set out in full herein.

102.    At the times mentioned, the Individual Defendants were, and are now, the Officers/Supervisors of Sunshine.  The Individual Defendants were employers of PLAINTIFFS and others similarly situated within the meaning of Section 3(d) of the Act in that the Individual

Defendants acted directly in the interests of Sunshine in relation to its employees, including PLAINTIFFS and others similarly situated.  The Individual Defendants had operational control of the business and are jointly and severally liable for PLAINTIFFS' damages.

103.    Individual Defendants were and are, at all times relevant, persons in control of Sunshine's financial affairs and can cause Sunshine to compensate (or not to compensate) its employees in accordance with the FLSA.

104.    Individual Defendants willfully and intentionally caused PLAINTIFFS not to receive overtime compensation as required by the law of the United States as set forth above and remain owing PLAINTIFFS these overtime wages since the commencement of PLAINTIFFS' employment with Sunshine as set forth above.

105.    PLAINTIFFS have retained the law offices of the undersigned attorney to represent them in this action and are obligated to pay reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS, and those similarly situated, request that this Honorable Court:

A.    Enter judgment for PLAINTIFFS, and other similarly situated, and against Individual Defendants on the basis of Individual Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.    Award PLAINTIFFS actual damages in the amount shown to be due for unpaid wages, with interest plus reimbursement of expenses; and

C.    Award PLAINTIFFS an equal amount in double damages/liquidated damages; and

D.    Award PLAINTIFFS reasonable attorneys' fees and costs of suit; and

E.      Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

## JURY DEMAND

PLAINTIFFS and those similarly situated demand trial by jury of all issues so triable as of right.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1981 (DISCRIMINATION)

106.   Plaintiffs adopt and incorporate by reference the allegations in paragraphs 1 to 6 of this Complaint.

107.   All Plaintiffs were born in Nicaragua (Matus) and Honduras (all other Plaintiffs), Central America and are part of the Central American race or descent.  They are not white.

108.   At all times relevant, Plaintiffs were in a contractual relationship with the Corporate Defendants, within the meaning of 42 U.S.C.A. § 1981, as amended.

109.   During the course of Plaintiffs' employment with these Corporate Defendants, these Defendants violated Plaintiffs' rights by depriving them of their right to the enjoyment of all benefits, privileges, terms and conditions of their employment contract as is enjoyed by non-Central Americans, white Cubans, in violation of 42 U.S.C.A. § 1981(b), as amended.

110.   During the course of Plaintiffs' employment with the Corporate Defendants, Plaintiffs have not enjoyed the same benefits, privileges, terms and conditions of employment, as have non-Central American, white Cuban employees of these Defendants.

111.   These Defendants' treatment, practices and policies directed toward Plaintiffs, denied Plaintiffs the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by citizens that are not of Central America, in violation of 42 U.S.C.A. § 1981, as amended.

112.   Specifically, the Corporate Defendants paid Plaintiffs lower salaries than their white Cuban counterparts, who also worked as housekeepers/room attendants at the Grand Beach.

113.   In addition, the Corporate Defendants fired all Honduran and Nicaraguan, Central Americans, but did not fire their white Cuban co-workers who also worked as housekeepers/room attendants.

187.   The Corporate Defendants' treatment, practices and policies directed toward Plaintiffs denied Plaintiffs the right to make and enforce contracts as enjoyed by citizens who are not Central Americans, white Cubans, in violation of 42 U.S.C.A. § 1981, as amended.

188.   Through the actions of Plaintiffs, the Corporate Defendants intended to discriminate against Plaintiffs on the basis of their Central American race.

189.   During the course of Plaintiffs' employment with the Corporate Defendants Plaintiffs have been subjected to a discriminatory, hostile and offensive work environment because they are of the Central American race and are not of the white Cuban race.

190.   As a direct and proximate result of the foregoing, Plaintiffs have suffered embarrassment, humiliation, emotional distress, and other forms of damage.

191.   Plaintiffs have suffered damages of an on-going and continuous nature.

**WHEREFORE**, Plaintiffs request that this Honorable Court:

   A.   Enter judgment in Plaintiffs' favor and against the Corporate Defendants for their violations of 42 U.S.C.A. § 1981, as amended;

   B.   Award Plaintiffs actual damages suffered;

   C.   Award Plaintiffs compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress Plaintiffs have suffered;

   D.   Award Plaintiffs prejudgment interest on his damages award;

E.  Enjoin the Corporate Defendants' officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiffs and any employee;

F.  Award Plaintiffs reasonable costs and attorney's fees; and

G.  Grant Plaintiffs such other and further relief as this court deems equitable and just.


Dated: December 21, 2016.

Respectfully submitted,

By:   /s/ R. Martin Saenz
R. Martin Saenz, Esquire
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile:  (888) 270-5549